USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/9/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THIERNO S. DIALLO

                              Plaintiff,

-v-

WHOLE FOODS MARKET GROUP, INC.,

                              Defendant.

16 Civ. 9228 (PAE) (KNF)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

*Pro se* plaintiff Thierno Diallo brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–297; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101–131. He alleges that his employer, Whole Foods Marketing Group, Inc. ("Whole Foods"), terminated his employment, failed to promote him, harassed and intimidated him, and retaliated against him, all on account of his national origin. Before the Court is the October 29, 2018 Report and Recommendation of the Hon. Kevin N. Fox, United States Magistrate Judge, recommending that the Court deny Whole Foods' motion for summary judgment. Dkt. 51 ("Report"). For the following reasons, the Court adopts the Report in full, save that the Court dismisses Diallo's state and city law claims.

## I. Background

### A. Factual Background

The Court incorporates by reference the account of the undisputed facts set forth in the Report. *See* Report at 20. The Court, however, provides the following brief summary, limited to

1

those facts necessary to understand the issues presented by Whole Foods' objections to the Report.

Diallo was born in Guinea. He worked in Whole Foods' produce department at the company's Midtown East store in Manhattan between September 2012 and December 2015, when he was terminated. *See id.*

Diallo claims that, at Whole Foods, he experienced continuous acts of discrimination including jokes, denial of pay raises, and eventually termination because of his national origin. Dkt. 5 (Amended Complaint, or "AC") at 4. The Produce Team for which Diallo worked consisted of approximately 45 team members, including two to three supervisors, one team leader, and one or two assistant team leaders. *Id.* Diallo claims that during his time at Whole Foods, team leaders were from Jordan, Columbia, Mexico, the Dominican Republic, Haiti, Tibet, and, at some points, various African countries. *Id.* at 4. He alleges that throughout his tenure at Whole Foods, several team leaders or assistant team leaders "made frequent negative comments about people from Africa and sometimes called [him] names." *Id.*

Diallo's AC details numerous instances in which team leaders allegedly made derisive comments based on his national origin. For example, Diallo claims that in 2015, Luis Arango, the team leader at the time, and Nathan Nakhid, the assistant Team Leader, laughed at him for stating that he was working hard in hopes of one day becoming a supervisor. *Id.* On that occasion, Arango allegedly asked, "Did you see any African Team Leader here?" and declared, "You will not be even a Supervisor, so don't think about moving up." *Id.* Diallo also claims that Nakhid had harassed him for years, dating to 2012, when Nakhid was a regular team member. *Id.* at 5–8. In 2012, after Diallo had already requested to work the day-shift, he claims, Nakhid had remarked, "I almost forgot you are African, you can work for many . . . that is why you got

2

to stay in the overnight team because you were able to do the work of three people." *Id.* at 5. During summer 2015, Diallo asked Nakhid to stop calling him nicknames and names other than Thierno. Nakhid allegedly replied, "I am your boss here so I will call you how I want; if you are not happy you can leave." *Id.*

Diallo also alleges that his supervisors and team leaders treated him differently from the non-African members of his team. He alleges that leaders allowed non-African team members to take paid breaks, but denied him similar privileges, *id.*, and that non-African members of his team routinely overstayed their breaks with impunity, *see id.* at 6.

Diallo further claims that he was denied pay raises to which he was entitled. When he complained to the Team Member Information Service in 2015, he alleges, his situation briefly improved, but Nakhid eventually told him that Whole Foods would be decreasing his pay rate. *See id.* at 7. Diallo alleges that he then complained to the Team Member tip line, which was supposed to handle situations confidentially. *See id.* He alleges, however, that his situation worsened, leading him to make repeated requests to transfer teams. *See id.*

Finally, Diallo claims, on December 2, 2015, the Store Leader at the time and Nakhid, his team leader, told him of a report filed by his assistant team leader, stating that Diallo had overstayed his lunch break on November 30, 2015. *See id.* at 6. Diallo explained that after using the restroom he had gone to pray. His employment was nevertheless terminated. Diallo alleges that his termination was the product of his team leaders' bias against him on account of his national origin. *See id.*

### B. Procedural History

#### 1. Diallo's Claims and Whole Foods' Summary Judgment Motion

On November 28, 2016, Diallo, proceeding *pro se*, filed his original complaint, bringing federal, state, and city claims of discrimination. Dkt. 2. On January 10, 2017, Chief Judge McMahon issued an order finding that the complaint failed to state a claim under Title VII and granting Diallo leave to amend. Dkt. 4 ("McMahon Order") at 2, 5–6. As to Diallo's claims under state and city law, Chief Judge McMahon noted that "the face of [p]laintiff's complaint suggests that [p]laintiff has elected his remedies under the [NYSHRL and NYCHRL] and is therefore barred from pursuing those claims in this Court." *Id.* at 5. Chief Judge McMahon informed Diallo that if he "chooses to amend his complaint, he should provide any facts indicating that he has not elected his remedies, otherwise his claims may be subject to dismissal." *Id.*

On February 17, 2017, Diallo filed an amended complaint. Dkt. 5. On March 30, 2017, the Court referred the case to mediation. Dkt. 7. On July 31, 2017, the parties participated in a mediation session.

On October 25, 2017, the Court referred this case to Magistrate Judge Fox for general pretrial supervision. Dkt. 19. On April 24, 2018, the Court amended the referral order to include issuing a Report and Recommendation on Whole Foods' anticipated summary judgment motion. Dkt. 39.

On May 14, 2018, Whole Foods filed its motion for summary judgment, Dkt. 41, and supporting papers: a memorandum of law, Dkt. 42, the declaration of Michael J. Slocum, Esq., and attached exhibits, Dkt. 43, and a Statement Pursuant to Local Rule 56.1, Dkt. 44. On June 15, 2018, Diallo filed a declaration in opposition to the motion, Dkt. 48 ("Diallo Decl."), and a

Counter Statement Pursuant to Local Rule 56.1, Dkt. 49. On June 22, 2018, Whole Foods filed a reply. Dkt. 50.

### 2. The Report and Recommendation

On October 29, 2018, Judge Fox issued the Report. It recommended that the Court deny Whole Foods' motion for summary judgment in its entirety. Dkt. 51.

The Report recommended that the motion, as to Diallo's Title VII claims, be denied on three grounds.

First, Whole Foods "failed to establish that it is undisputed" that Diallo had admitted to the New York State Division of Human Rights that he had overstayed his break time, the rule violation on which Whole Foods ostensibly based its decision to terminate him. Report at 14 (internal quotation marks omitted). On that point, the Report noted, Whole Foods had misstated the record, and indeed, its Rule 56.1 Statement was full of instances—the Report listed more than six pages of examples—in which Whole Foods had "cit[ed] to evidence that does not support the asserted facts." *Id.* at 14; *see also id.* at 14–16.

Second, even if Diallo had admitted the break-time violation, Whole Foods had failed to show that it "consistently terminates employees for theft-of-time as a single infraction," so as to make clear that that infraction (as opposed to national-origin discrimination) had been its basis for terminating Diallo. *Id.* at 21 (internal quotation marks omitted). Although Whole Foods identified four other instances in which it had allegedly terminated employees for such conduct, the Report found the reasons given by Whole Foods for terminating those employees distinct from "theft-of-time," the reason Whole Foods gave for terminating Diallo. *See id.* at 17. In addition, Judge Fox noted, "theft-of-time" was not listed "as an example of misconduct" in a Whole Foods manual listing MAJOR INFRACTIONS." *Id.* He noted that, while Whole Foods'

5

list of major infractions includes "theft of any kind," such thefts "appear[ed] to concern property-related misappropriations," in contrast to "theft-of-time." *Id.* Accordingly, whether a single "theft-of-time" violation was the kind of infraction that, as a matter of policy or practice, automatically would result in termination of a Whole Foods employee appeared to be the subject of a factual dispute unresolvable on summary judgment.

Third, Diallo's Title VII claims of failure to promote, hostile work environment, and retaliation also turned on material disputes of fact. *See id.* at 23–24. These disputes included whether Diallo's supervisors had made comments and jokes to him about his African origin and treated him differently from non-African employees. *See id.* at 23. These disputed facts, the Report found, "are material to the fourth element of the *prima facie* Title VII discrimination claim," and to Diallo's hostile work environment claims. *Id.* at 23–24. The parties also disputed whether Diallo, as he claimed, had applied to a specific position. *See id.* That issue, the Report stated, is material to Diallo's failure to promote claim. The parties also disputed "whether the reasons for [ ] plaintiff's termination was pretext . . . in light of the evidence in the record that [ ] plaintiff complained about [ ] defendant's discriminatory treatment of him." *Id.* at 24.

For these reasons, Judge Fox recommended that Whole Foods' summary judgment motion be denied. Treating Diallo's state and city claims as tracking the Title VII claims, the Report recommended that summary judgment be denied on these claims, too.

On November 9, 2018, Whole Foods filed timely objections to the Report. Dkt. 52 ("Def. Mem."). On December 17, 2018, Diallo filed a letter in response to Whole Foods' objections. Dkt. 55 ("Pl. Mem.").

## II. Applicable Legal Standards

### A. Standard of Review for a Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes timely and specific objections to a Report, the court is obligated to review the contested issues *de novo. See id.*; Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). Accordingly, as to Whole Foods' objections relating to the Report's recommendation that its motion for summary judgment be denied, *de novo* review requires application of the summary judgment legal standard.

### B. Standards Governing Motions for Summary Judgment

A party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002). Summary judgment is an extreme remedy that deprives the non-moving party of the right to present a case to the jury, *see Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 754 (2d Cir. 1976); therefore, the Court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial." *Auletta v. Tully*, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (internal quotation marks and citations omitted), *aff'd*, 732 F.2d 142 (2d. Cir. 1984). In addition, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citations omitted); *see also Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999) ("When considering a motion for

summary judgment the court must draw all factual inferences and resolve all ambiguities in favor of the nonmoving party.").

Once the moving party satisfies its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" *Phillips v. Kidder, Peabody & Co.*, 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247 (emphasis in original). Instead, sufficient evidence must support the non-moving party's case such that a jury could return a verdict in its favor. *See id.* at 248.

### C. Elements of Claims Under Title VII

Under Title VII, a plaintiff establishes "an unlawful employment practice . . . when [he] demonstrates that . . . national origin was a motivating factor for any employment practice even though other factors also motivated the practice." 42 U.S.C. § 200e-2(m). In the absence of direct evidence of discrimination, discrimination claims under Title VII are guided by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. To do so, the plaintiff must show "(1) that she was within the protected [class], (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir.2010). "This burden is not a heavy one." *Id.* A plaintiff cannot establish a *prima facie* case, however, based

8

on "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985).

If the plaintiff can demonstrate a *prima facie* case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the disparate treatment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (internal quotation marks and citations omitted). "[I]f the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination." *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). A plaintiff is not "required to prove the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision." *Finn v. N.Y. State Office of Mental Health–Rockland Psychiatric Ctr.*, No. 08 Civ. 5142 (VB), 2011 WL 4639827, at *11 (S.D.N.Y. Oct. 6, 2011) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001)). Rather, the plaintiff "must show that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision." *Id.*

### III. Discussion

Whole Foods makes four objections to the Report. The Court reviews these in turn.

#### A. Whole Foods' Motivation for Terminating Diallo's Employment

Whole Foods argues that there is no dispute of fact whether Diallo's national origin motivated the decision to terminate his employment. Def. Mem. at 5. It contends that the parties do not dispute that "on November 30, 2015[], [p]laintiff knowingly took an unauthorized break while on-the-clock." Def. Mem. at 1 (internal quotation marks omitted). And, Whole Foods notes, its "written policies expressly provide that theft of time—also known as misrepresentation of time worked—is a Major infraction warranting immediate termination"; Whole Foods

represents that it consistently enforces this policy. *Id.* at 2; *see also id.* at 6. Whole Foods contends that Judge Fox wrongly reached a contrary conclusion "by parsing hairs over semantic questions regarding irrelevant differences between the phrases 'time theft,' 'theft-of-time,' misrepresentation of time, and 'stolen time.'" *Id.* at 3.

This objection is unpersuasive. As the Report makes clear—and as Whole Foods elsewhere acknowledges—the relevant inquiry is not whether Diallo committed the infraction at issue—taking an unauthorized break—but whether that infraction was in fact necessarily the basis for its decision to terminate Diallo. *Id.* at 6 (quoting *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (internal quotation marks and citation omitted)). Here, Diallo claims that a single theft-of-time episode is not a major infraction for which Whole Foods consistently terminates infringing employees. Diallo Decl. ¶50. And in his case, he claims, his supervisor's hostile attitude towards him due to his African origin was the actual motivation, or one of the motivations, for his termination. Further undermining Whole Foods' assertion that it invariably fires employees for single time-theft episodes, Diallo has further alleged that other team members, not of African descent, overstayed their breaks but were not terminated.

Assuming *arguendo* that it is undisputed that Diallo once took a break of unauthorized duration, the motivations of the decisionmaker(s) who later terminated him cannot be resolved on the record at hand without impermissibly resolving a dispute of fact. Whole Foods may be able to persuade a factfinder that it universally terminated employees for this one-time infraction and that this uniform practice was its sole reason for terminating Diallo. But Diallo may be able to persuade a factfinder that this practice was less than unitary, that racial animus contributed to the termination decision, that Whole Foods' invocation of Diallo's one-rule violation was a

10

pretext for a termination motivated by discrimination, and that but for Diallo's national origin, he would not have been terminated. These factual disputes require resolution at trial.

**B.     The Failure to Promote Claim**

Whole Foods argues that Judge Fox ignored deficiencies in Diallo's failure to promote claim, specifically that he failed to identify a position for which he had applied and did not receive. Def. Mem. at 8. Whole Foods contends that, when deposed, Diallo gave inconsistent testimony, stating at one point that he used his 30-minute breaks to apply for new internal positions while stating at another that Whole Foods never posted specific available positions. *Id.* Whole Foods also argues that Diallo, while faulting Whole Foods for hiring a different employee for a Produce Supervisor position, only speculatively claims that that decision not instead to promote Diallo derived from Diallo's national origin. *Id.* at 9.

Here, too, there are sufficient factual disputes to warrant leaving this claim for resolution by a jury. The Court here adopts Judge Fox's analysis. A finder of fact could conclude, based on Diallo's testimony, that he made known his interest in promotion to an internal position in a way that fairly conveyed interest in the Produce Supervisor position. And a finder of fact could infer that team leader Nakhid, whom Diallo alleges had made racially derogatory comments, had some say in that decision, much as he did in the decision to terminate Diallo. At the same time, a finder of fact could find that Diallo did not make his interest known in such a promotion, and that the lack of a promotion of Diallo is not reliably traced to discriminatory animus by Nakhid (or any other official). The Court views Diallo's claims with the solicitude due a *pro se* party. *See Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) ("'[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per

curiam))). Accordingly, the Court concludes that this claim, too, turns on material disputes of fact and must be resolved at trial.

### C. Hostile Work Environment and Retaliation Claims

Whole Foods next argues that the Report erred in finding that Diallo has not abandoned his hostile work environment and retaliation claims, Def. Mem. at 9, and in sustaining these claims. As to the hostile work environment claim, Whole Foods argues, as in its moving brief, that the conduct on which Diallo bases this claim consisted of no more than "petty slights or stray remarks" insufficient to support such a claim, and that Diallo lacks evidence that the conduct he protests was continuous. *See id.* at 10. As to the retaliation claims, Whole Foods argues that Diallo did not experience any adverse action in response to making a complaint of discrimination to a company tip line. *Id.*

In claiming abandonment of these claims, Whole Foods notes that Diallo's brief opposing summary judgment did not make any argument or point to specific evidence supporting those claims. Whole Food's argument is meritless. As the Second Circuit has held, "when a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court . . . must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Jackson v. Fed. Exp.*, 766 F.3 189, 197 (2d Cir. 2014). Here, Judge Fox did just that: In addition to Whole Foods' submissions, he considered Diallo's response to Whole Foods' 56.1 Statement and Diallo's declaration based on his personal knowledge and experience. *See* Report at 5. Those submissions, as Judge Fox found, contain factual statements that both support Diallo's hostile work environment and retaliation claims and presuppose Diallo's continued pursuit of them.

As to the merits, Whole Foods' argument on the hostile work environment claim presents a close question. The Second Circuit has held that such a claim must be based on more than mere petty slights. Rather, "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2005) (citations omitted). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 321. The workplace statements of which Diallo complains are less severe than those reported in many cases sustaining hostile work environment claims. Nevertheless, viewing the remarks that Diallo has alleged in totality and in the context of his particular workplace, the Court, like Judge Fox, is persuaded that a finder of fact could find this standard met by the frequent name-calling that Diallo alleges occurred, by the frequent negative references to his African heritage, and by the multiple comments allegedly made that can be read to equate African heritage with lesser workplace competence and capability. *See, e.g.*, *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 464 (S.D.N.Y. 2017) (finding hostile work environment claim plausible where plaintiff alleged that defendants made "multiple comments" indicating that employees did "not fit[ ] the image of the store" and describing employees in racially discriminatory terms).

As to the retaliation claim, under Title VII, an employee engages in a protected activity when he "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The Second Circuit has held that protected activities include "the filing of formal charges of discrimination,"

13

as well as "informal protests of discriminatory employment practices." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Here, Diallo's complaint to the tip line satisfies this first requirement. The parties dispute, however, whether a finder of fact could find that Whole Foods took any adverse action towards Diallo based on that complaint. In its objections, Whole Foods contends that Diallo does not allege that any new adverse practice ensued based on that complaint. In his letter opposing the objections, Diallo has explained, however, that his perception is that Whole Foods continued to treat him discriminatorily, and indeed treated him more harshly, following his complaint and that he infers that its refusal to rectify its treatment of him was in retaliation for the complaint. Pl. Mem. at 10. As he put the point in his Amended Complaint, after the complaint to the tip line, his "situation went back on deteriorating more and more which explained my multiple attempts to transfer to another team or store." AC at 8. More specifically, Diallo alleges that he was fired and that Whole Foods denied him promotions based on his national origin, both of which are specific adverse actions sufficient to support his retaliation claim and which occurred after the calls to the tip line. The Court views Diallo's allegations with the solicitude due a *pro se* plaintiff. So viewing these allegations, while a finder of fact could certainly not find an retaliatory action traceable to Diallo's calls to the tip line, the finder alternatively could potentially find for Diallo on this point. The Report, therefore, correctly recommended that Whole Foods' motion for summary judgment on this claim be denied.

### D. State and City Law Claims

Whole Foods, finally, argues that Diallo's claims under state and city human rights laws are deficient because he elected to pursue administrative remedies which preclude pursuit of

14

such claims in this Court. Whole Foods asks the Court to reject the Report's recommendation and grant its motion for summary judgment on those claims.

Under the NYSHRL and NYCHRL, a plaintiff may file a complaint with *either* a court or the State or City Human Rights Divisions. *See Jowers v. Family Dollar Stores, Inc.*, No. 09 Civ. 2620 (WHP), 2009 WL 2143586, at *2 (S.D.N.Y. July 13, 2009). A plaintiff who brings an action before a state or city administrative body is barred from bringing those claims before any court, including federal courts. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 63, 75 (2d Cir. 2000). And a plaintiff who elects to pursue such claims before an administrative body may only seek judicial review of that administrative body's decision in state court. *See* N.Y. Exec. Law § 298; N.Y.C. Admin. Code § 8-123; CPLR § 7801 *et seq.* There are several exceptions to this prohibition, *see* N.Y. Exec. Law § 298; N.Y.C. Admin. Code § 8-113, 502(b), but Diallo does not argue, or offer a basis to conclude, that he falls within any.

Whole Food is correct that, under this line of authority, Diallo is barred from bringing his state and city human rights law claims here. As Chief Judge McMahon noted, Diallo's initial complaint included a Notice of Right to Sue from the Equal Employment Opportunity Commission. *See* Dkt. 2 at 5; McMahon Order at 5. The notice states, "The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." Dkt. 2 at 5. In light of the reference to an administrative investigation, Chief Judge McMahon, in her January 10, 2017 order, directed Diallo to provide evidence that he had not pursued administrative remedies under the NYSHRL and NYCHRL. McMahon Order at 5. Chief Judge McMahon warned that if Diallo failed to do so, "his claims may be subject to dismissal." *Id.* Diallo, however, did not comply with this order. In his amended complaint, Diallo ceased to attach the notice in question, but he did not plead facts curing this deficiency, *i.e.*, disclaiming

the clear import of the notice, that had pursued administrative relief. Nor, either at summary judgment, or in response to Whole Foods' objections seeking dismissal on this ground, has he denied pursuing his state and city law claims administratively. Under these circumstances, it appears undisputed that Diallo pursued such relief. This election of remedies precludes him from pursuing his state and local human rights law claims here.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report's recommendation with respect to Diallo's Title VII claims and denies Whole Foods' motion for summary judgment on these claims. The Court, however, declines to adopt the recommendation that summary judgment be denied on Diallo's NYSHRL and NYCHRL claims, and instead grants summary judgment to Whole Foods on these claims. The Court respectfully directs the Clerk of Court to terminate the motion pending at Dkt. 41.

The Court refers the case back to Magistrate Judge Fox (1) to determine whether the parties are amenable to settlement, now that the case is otherwise headed for trial; (2) to identify any other issues that are properly resolved prior to this Court's setting a trial date and deadlines for pretrial submissions; and (3) to determine whether Diallo asks this Court to seek to appoint pro bono counsel to represent him at trial.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: January 9, 2019
New York, New York